**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

**PETER L. VASQUEZ,**

Plaintiff,

v.

**Case No. 12-4021-RDR**

**DAX K. LEWIS, RICHARD JIMERSON, and JASON EDIE,**

Defendants.

**MEMORANDUM AND ORDER**

This is an action brought by the plaintiff pursuant to 42 U.S.C. § 1983 against three Kansas Highway Patrol(KHP) troopers, Dax K. Lewis, Richard Jimerson and Jason Edie. Plaintiff contends that he was illegally detained by the officers when his car was stopped on December 16, 2011. Each of the troopers has filed a motion to dismiss. Having carefully reviewed the arguments of the parties, the court is now prepared to rule.

Plaintiff initially filed his complaint on February 28, 2012. He then filed an amended complaint on September 5, 2012. Plaintiff attached a transcript of a recording that he made on the night of the stop to the amended complaint. The court shall consider the transcript as well as the amended complaint in considering the defendants' motions to dismiss. See GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1385 (10th Cir. 1997).

I.

In his amended complaint, plaintiff alleges that he was traveling on Interstate 70 in Wabaunsee County, Kansas on December 16, 2011. He was stopped by KHP Trooper Lewis and cited for a registration violation because the tint of his windows made it difficult for his temporary Colorado tag to be seen at night. He further alleges that Troopers Jimerson and Lewis "discussed their observations and jointly decided to continue [his] detention after issuance of the citation." Plaintiff alleges that Troopers Jimerson and Lewis "did so without reasonable suspicion and in violation of [his] Fourth Amendment rights."

Plaintiff asserts that while was he stopped he told Troopers Jimerson and Lewis he was on his way to Elkton, Maryland to join his girlfriend and his daughter who already lived there. He also alleged that he carried some of his personal belongings with him as part of the final portion of his move. During the stop, the troopers checked his registration and determined he also owned a 2011 Chevy Malibu. Trooper Lewis also noticed that one of plaintiff's headlights was not functioning. A further conversation ensued in which Trooper Lewis asked plaintiff why he was not driving his newer car on a cross-country trip. Plaintiff explained that he had purchased this car, a 1992 BMW, for his girlfriend and the 2011 Malibu had already been moved to Maryland on a previous trip. Plaintiff was then asked where all of "his stuff was" and plaintiff explained that "most of his

belongings had already been moved to Maryland, and this was his final trip between his home in Colorado and his new home in Maryland."

After presenting the ticket to plaintiff, and indicating that plaintiff was free to leave, Trooper Lewis "returned to ask more questions of [plaintiff]." Trooper Lewis asked if he was transporting anything illegal and plaintiff said he was not. Trooper Lewis asked for permission to search the car and plaintiff denied the request. Trooper Lewis then asked for permission to have a canine search the exterior of plaintiff's vehicle. Plaintiff told Trooper Lewis that he would not consent to a canine search. Trooper Lewis then told plaintiff he was being detained. When plaintiff asked why, Trooper Lewis responded that "he thought something criminal might be going on." He did not, however, specify what criminal activity he suspected. Plaintiff was forced to wait fifteen minutes for a drug dog to arrive. Plaintiff alleges that Trooper Edie arrived later with the drug dog and was briefed on the situation by Trooper Jimerson. Trooper Edie used the drug dog to sniff the exterior of plaintiff's car "while the Plaintiff was detained without reasonable suspicion to believe he was involved in criminal activity."

After the drug dog sniff, Trooper Lewis demanded that plaintiff turn over his keys to enable the officers to search the vehicle. When plaintiff asked why he had to provide the keys, Trooper Lewis told

him, "Because of the dog." Nothing illegal was found in the car. After being detained for approximately 45 minutes total and 30 minutes after the issuance of the citation, plaintiff was permitted to leave. Plaintiff has alleged that he was "polite and non-obstructive" during the stop. He does assert, however, that "he clearly voiced his objections every time the troopers attempted to get his consent to a search of his vehicle." Plaintiff used his cellular phone to record the audio-video of his interactions with the troopers. Plaintiff alleges that the transcripts of these recordings show that "any reasonable officer would have known that there was not reasonable suspicion to detain [him]."

Plaintiff seeks the following relief: (1) $375 in damages to his vehicle; (2) $10,000 for non-economic damages; (3) punitive damages; (4) reasonable attorney's fees; and (5) payment of costs.

II.

In their separate motions, the defendant troopers have raised a variety of arguments, some collectively and some individually. Each of the troopers contends that any claims asserted by plaintiff against any one of them in their official capacity is barred by Eleventh Amendment immunity. Each trooper further argues that plaintiff cannot assert an official capacity against each of them because a KHP Trooper is not a "person" subject to liability under 42 U.S.C. § 1983. They further assert that plaintiff lacks standing

to claim $375 for damages to the vehicle because the car belongs to his girlfriend. The troopers next contend they are entitled to dismissal based upon qualified immunity. Each contends that his conduct would not violate clearly established law of which every reasonable law enforcement officer would have known. Finally, Troopers Jimerson and Edie assert that plaintiff has failed to plead facts sufficient to show that each personally participated in any alleged violation of plaintiff's rights. Trooper Edie has also argued that he cannot be liable to merely conducting a canine sniff of the plaintiff's car since the law is clearly established that a canine sniff does not implicate the Fourth Amendment.

III.

"To survive a motion to dismiss [under Rule 12(b)(6) ], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." See id. at 679. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." Lane v. Simon, 495 F.3d 1182, 1186 (10th Cir. 2007)(internal quotation omitted).

A. Eleventh Amendment

The defendants seek dismissal of any claims made by plaintiff against them in their official capacities. The defendants contend that such claims are barred by the Eleventh Amendment. Plaintiff has not responded to this argument, and the court believes that this lack of a response is an indication from plaintiff that he never intended to assert such a claim. Nevertheless, to the extent that such claims can be gleaned from plaintiff's complaint, the court shall dismiss them. When an officer is sued under § 1983 in his official capacity, the suit is simply another way of pleading an action against the entity of which the officer is an agent. In this case, the officers are employed by the State of Kansas. Official capacity suits against the State of Kansas are barred by the Eleventh Amendment. See Johns v. Stewart, 57 F.3d 1544, 1552 (10th Cir. 1995). Accordingly, to the extent that such claims are asserted by the plaintiff, they shall be dismissed.

B. Standing to Raise Damages Claim

Trooper Edie has also suggested that plaintiff lacks standing

to claim $375 for alleged damage to a car he claims belongs to his girlfriend. He contends that plaintiff cannot assert this claim on behalf of his girlfriend. He further argues that such a claim is a state law claim, not a civil rights claim. He asserts that such a claim is not cognizable under § 1983 based upon a violation of the Fourth Amendment. Plaintiff has responded that he does have standing to assert this claim because the car is titled in his name.

Based upon the present record, the court is unable to dismiss plaintiff's claim for damages to the car. There is nothing in the amended complaint to indicate that plaintiff lacks standing to assert this claim. Moreover, the court finds no support for defendant's position that his claim for property damages is not cognizable under § 1983. See Townes v. City of New York, 176 F.3d 138, 148-49 (2nd Cir. 1999)("Victims of unreasonable searches or seizures may recover damages directly related to the invasion of their privacy--including (where appropriate) damages for physical injury, property damages, injury to reputation, etc.").

C. Failure to State a Claim

The court next considers whether the plaintiff has sufficiently alleged a constitutional violation against defendants Jimerson and Edie. The Fourth Amendment guarantees an individual's right to be free from unlawful search and seizure. Herring v. United States, 555 U.S. 135, 136 (2009). An investigatory stop must be "reasonably

related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, 392 U.S. 1, 20 (1968). In order to satisfy this requirement, the ensuing detention "must not exceed the reasonable duration required to complete the purpose of the stop." United States v. Rice, 483 F.3d 1079, 1082 (10th Cir. 2007). Accordingly, in the context of an investigatory stop of a motorist, "[o]nce an officer returns the driver's license and registration, the traffic stop has ended and questioning must cease; at that point, the driver must be free to leave." United States v. Villa, 589 F.3d 1334, 1339 (10th Cir. 2009). The detention cannot be continued beyond this point "unless the driver consents to further questioning or the officer has reasonable suspicion to believe other criminal activity is afoot." Rice, 483 F.3d at 1083–84. Even a very brief extension of the detention without consent or reasonable suspicion violates the Fourth Amendment. See United States v. Lopez, 443 F.3d 1280, 1285 (10th Cir. 2006) ("The Supreme Court has also made clear ... that an individual 'may not be detained *even momentarily* without reasonable, objective grounds for doing so.'"(quoting Florida v. Royer, 460 U.S. 491, 498 (1983))).

To prevail on a § 1983 claim, a plaintiff must show that a defendant personally participated in a constitutional violation, see Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996), or "personally directed the violation or had actual knowledge of the

violation and acquiesced in its continuance," Beedle v. Wilson, 422 F.3d 1059, 1074 (10th Cir. 2005).

The amended complaint adequately alleges that defendant Trooper Jimerson decided, along with Trooper Lewis, to "continue the detention of [plaintiff] after the issuance of the citation" and they did so "without reasonable suspicion." This allegation and the supporting alleged facts in the amended complaint, when viewed as true with all inferences drawn in plaintiff's favor, are sufficient to allege a § 1983 claim against Trooper Jimerson.

The amended complaint further alleges that Trooper Edie, who arrived later at the scene of the stop with the drug dog, "facilitated and participated in the prolonged detention of [plaintiff] without reasonable suspicion" after he was "briefed on the situation" by Trooper Jimerson. This presents a closer case than the claim against Trooper Jimerson, but the court is persuaded that there are sufficient allegations in the amended complaint against Trooper Edie to demonstrate that he had actual knowledge of the violation and acquiesced in its continuance. Accordingly, the court shall deny this aspect of the defendants' motions.

Trooper Edie has also suggested that he is not liable for merely using his dog to sniff the exterior of plaintiff's vehicle because a dog sniff does not implicate the Fourth Amendment. Although the Supreme Court has held that a dog sniff, standing alone, does not

violate the Fourth Amendment, United States v. Place, 462 U.S. 696 (1983), it must occur during a lawful traffic stop. Illinois v. Caballes, 543 U.S. 405, 409 (2005). Thus, having determined that the plaintiff has made sufficient allegations that the defendants did not have reasonable suspicion to further detain plaintiff following the return of his documents, then we find no merit to Trooper Edie's contention.

IV.

The court next considers the application of qualified immunity here. Qualified immunity protects governmental officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This doctrine balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The qualified immunity inquiry requires analysis of two distinct questions: (1) whether—-taken in the light most favorable to the plaintiff as the party asserting the injury—-the plaintiff alleges sufficient facts to show the public official's conduct violated plaintiff's constitutional rights; and (2) whether the constitutional right alleged to be violated was

clearly established at the time of the alleged violation in a sufficiently analogous factual setting. See Saucier v. Katz, 533 U.S. 194, 201 (2001), abrogated in part by Pearson, 555 U.S. at 236. While it is often desirable to proceed initially with the first prong, a finding of qualified immunity may be appropriate on either question. See Pearson, 555 U.S. at 236.

The determination of whether a right was clearly established within a sufficiently analogous factual setting must be made within the specific context of the case, not as a broad general proposition. Saucier, 533 U.S. at 201; see also Medina v. City and County of Denver, 960 F.2d 1493, 1497 (10th Cir. 1992). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina, 960 F.2d at 1498. This does not mean the prior case law must have precisely the same facts, however, but rather requires a particularized inquiry to determine whether the contours of the right were sufficiently defined by prior case law such that "a reasonable official would understand what he is doing violates that right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."

Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004).

The defendants argue that plaintiff has not demonstrated that the constitutional right alleged to be violated was clearly established at the time of the alleged violation in a sufficiently analogous factual setting. We must disagree. The court is thoroughly persuaded that the law was clearly established that a law enforcement officer cannot detain a driver after he has issued a citation or warning without reasonable suspicion unless the driver consents to further questioning or the officer has reasonable suspicion to believe other criminal activity is afoot. The defendants have argued that the various facts present here indicate that they are entitled to qualified immunity on plaintiff's claim. The defendants specifically suggest that the following facts show that the officers had reasonable suspicion to detain the plaintiff: (1) plaintiff's extreme nervousness; (2) the unusual arrangement of blankets to cover items in the car despite the tinted windows of the car; (3) fresh fingerprints on the trunk; (4) plaintiff's lack of eye contact; (5) plaintiff covering his mouth when talking to them; (6) plaintiff's evasive, hesitant and incomplete answers to their questions; (7) plaintiff's inconsistent answers to questions by different officers and internally inconsistent answers; (8) plaintiff traveling alone through the middle of the night--nearly 3 a.m.; (9) plaintiff choosing to drive an older car across the country

rather than two newer cars; and (10) plaintiff providing a different reaction to a question about marijuana than to a question about cocaine.

In making this argument, the defendant relies upon a number of cases where either (1) the court granted summary judgment to law enforcement officers based upon qualified immunity in § 1983 actions asserting illegal search or seizure under the Fourth Amendment; or (2) criminal cases where the court denied motions to suppress after considering arguments that law enforcement officers lacked reasonable suspicion to search or seize them under the Fourth Amendment.

The problem with defendants' argument is none of the facts noted above are presently before the court. The court must consider the defendants' motions based only upon the amended complaint and the transcripts which have been attached. At this stage, for purposes of deciding defendants' motions, the facts alleged do not support a finding that it was "objectively reasonable" for the defendants to believe there was reasonable suspicion for the continued detention of the plaintiff. Indeed, on the facts alleged by plaintiff, a reasonably competent officer would not believe he had reasonable suspicion to detain plaintiff after he issued the citation and returned plaintiff's documents. Accordingly, the defendants are not entitled to qualified immunity from plaintiff's unreasonable seizure

claim at this time.

In reaching this decision, the court notes the defendants' reliance upon a recent decision issued by the Tenth Circuit, Arencibia v. Barta, 2012 WL 4513233 (10th Cir. 10/3/2012). There, the Tenth Circuit affirmed a grant summary judgment by the district court to law enforcement officers based upon qualified immunity. Plaintiff had filed § 1983 action against several officers, alleging that the defendants had violated his Fourth Amendment right to be free from unlawful search and seizure during a traffic stop. Similarly to this case, plaintiff did not dispute the constitutionality of the initial traffic stop or the subsequent search of his truck. Arencibia, 2012 WL 4513233 at * 3. Rather, he challenged his detention following the receipt of a warning and the return of his papers as an unconstitutional seizure under the Fourth Amendment, as the plaintiff does here. Id. The district court concluded after considering all of the evidence at the summary judgment that qualified immunity applied because the law did not clearly establish that the officers lacked reasonable suspicion in the context of that stop. Id. at * 5. There, the law enforcement officer had identified multiple factors pointing to reasonable suspicion. Id. Under those circumstances, the Tenth Circuit agreed with the district court that the officer, having identified multiple factors pointing to reasonable suspicion, could not have

been on notice that he was violating a clearly established constitutional right. Id.

The distinguishing factor here is that the defendants are seeking the application of qualified immunity on a motion to dismiss. The court understands that qualified immunity questions should be resolved "at the earliest possible stage of litigation." Schwartz v. Booker, ___ F.3d ____, 2012 WL 6604196 at * 3 (10th Cir. 12/19/2012)(quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)(per curiam)). Nevertheless, the various factors noted by the defendants are not presently the court. The court, at this stage, is limited to considering the amended complaint and any attachments to it provided by the plaintiff. See County of Santa Fe, N.M. v. Pub. Serv. Co. of N.M., 311 F.3d 1031, 1035 (10th Cir. 2002)("In deciding a Rule 12(b)(6) motion, a federal court may only consider facts alleged within the complaint."). The court simply cannot make a legal determination here because the facts surrounding the detention are critical to the application of qualified immunity. The facts as alleged in this case make a plausible Fourth Amendment violation. In making that determination, the court does not find that reasonable suspicion was lacking, only that it was sufficiently pled, and that determination is reserved for the summary judgment stage. Thus, the court is not persuaded that Arencibia provides any support for the defendants' position at this time.

**IT IS THEREFORE ORDERED** that defendant Lewis' motion to dismiss (Doc. #38) be hereby granted in part and denied in part. Any claims asserted against defendant Lewis in his official capacity are hereby dismissed based upon Eleventh Amendment immunity. The remainder of the defendant's motion is denied.

**IT IS THEREFORE ORDERED** that defendant Edie's motion to dismiss (Doc. #47) be hereby granted in part and denied in part. Any claims asserted against defendant Edie in his official capacity are hereby dismissed based upon Eleventh Amendment immunity. The remainder of the defendant's motion is denied.

**IT IS THEREFORE ORDERED** that defendant Jimerson's motion to dismiss (Doc. #49) be hereby granted in part and denied in part. Any claims asserted against defendant Jimerson in his official capacity are hereby dismissed based upon Eleventh Amendment immunity. The remainder of the defendant's motion is denied.

**IT IS SO ORDERED.**

Dated this 9th day of January, 2013 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge