IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**PETER L. VASQUEZ,**

       **Plaintiff,**

v.

**DAX K. LEWIS and**
**RICHARD JIMERSON,**

       **Defendants.**

**Case No. 12-CV-4021-DDC-JPO**

## MEMORANDUM AND ORDER

    Kansas Highway Patrol Officers Dax Lewis and Richard Jimerson detained plaintiff after a routine traffic stop to search plaintiff's car for illegal drugs. The search revealed no drugs. Plaintiff argues that defendants violated his Fourth Amendment rights by detaining him when they lacked reasonable suspicion that he was doing anything illegal. Defendants filed this motion for summary judgment (Doc. 69), asserting the defense of qualified immunity. The Court concludes that qualified immunity protects defendants from liability and therefore grants their motion for summary judgment.

### I. Uncontroverted Facts

    The first step in assessing whether qualified immunity protects defendants is to determine the relevant facts. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The following facts are uncontroverted. On December 16, 2011, at 2:43 a.m., defendants saw plaintiff's 1992 BMW sedan with a temporary registration tag driving eastbound on I-70 in Wabaunsee County, Kansas. Defendants could not read the temporary tag because it was taped to the inside of the car's tinted rear window, so they decided to stop the car. Defendants turned on the emergency lights on their

1

patrol car, and plaintiff pulled to the side of the road. Plaintiff concedes that this initial stop did not violate his constitutional rights.

Jimerson stepped out of the patrol car and approached the BMW. Jimerson noted that plaintiff was the sole occupant of the vehicle and observed there were items covered by blankets in the front passenger seat and back seat of the car. He also noticed a pillow in the back seat of the car. Based on the arrangement of the back seat, Jimerson thought there might be someone in the back and asked plaintiff if anybody else was in the car. Plaintiff told him no. Jimerson then asked plaintiff where he was heading and plaintiff responded "Uh, Elkton, Maryland." Jimerson asked where Elkton was located, and plaintiff said, "Right on the border of Delaware." Plaintiff told Jimerson that he was from Colorado originally, but he had just moved to Maryland. Jimerson asked whether plaintiff had any family in Maryland, and plaintiff responded, "Just my daughter." Jimerson then took plaintiff's driver's license and proof of insurance and returned to the patrol car.

Back in the car, Jimerson told Lewis, sitting in the passenger seat, that plaintiff was trying to "keep his nervousness in check" and that he had items covered in the front and back seat of the car. Jimerson then told Lewis to go check the VIN number on plaintiff's BMW and to "see how nervous he is" and to "get a feel for him." Lewis did so and, upon returning to the patrol car, told Jimerson that he thought plaintiff "looks all scared to death." While Lewis was with plaintiff, Jimerson checked plaintiff's proof of insurance; it indicated that plaintiff also owned a 2011 Chevy Malibu and a 1998 Ford Mustang. Defendants found it suspicious that plaintiff would drive a 1992 model vehicle across the country when he owned newer cars. Based on the information known at that point, Jimerson suspected that plaintiff was transporting illegal

drugs and said "I'll call Edie," a reference to Trooper Jason Edie, who could bring a police dog to sniff plaintiff's car for drugs.

Lewis then went back to talk to plaintiff. Lewis asked where plaintiff worked, and plaintiff said, "We own a store called Boutiques at Brighton." Lewis asked plaintiff why he was driving an older 1992 model year vehicle instead of the 2011 Chevy Malibu on such a long trip. Plaintiff responded that he bought the Malibu for his girlfriend, who already was in Maryland. Plaintiff told Lewis that he was moving to Maryland, which prompted Lewis to ask "Where's all the stuff if you're moving?" Plaintiff told him that he had moved most of his belongings to Maryland already. After that, Lewis handed plaintiff a written warning and began to walk away from the car.

After a step or two, Lewis turned around and asked plaintiff if he could ask a couple more questions. Plaintiff said yes. Lewis asked plaintiff if he had any drugs in the vehicle, which plaintiff denied. Lewis then asked if he could search the car and plaintiff refused. After that, Lewis informed plaintiff that he was detaining plaintiff because he suspected that plaintiff was "probably involved in a little criminal activity here." Trooper Edie showed up with the police dog about 15 minutes later. Although the dog signaled that there were drugs in the car, defendants' subsequent search revealed nothing illegal.

On February 28, 2012, plaintiff filed this lawsuit against defendants under 42 U.S.C. § 1983. Plaintiff seeks to recover damages, arguing that defendants violated his Fourth Amendment rights by detaining him without reasonable suspicion that he was committing a crime.

## II. Qualified Immunity

Defendants argue they are entitled to summary judgment because qualified immunity shields them from any liability. Qualified immunity is a defense that protects government officials sued in their personal capacity for violating constitutional rights. *See Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). Recognizing that constitutional law is constantly evolving and that public officials cannot be "expected to predict the future course of constitutional law," the Supreme Court has decided to shield government officials performing discretionary functions from liability for civil damages as long as their conduct does not violate clearly established constitutional rights. *Procunier v. Navarette*, 434 U.S. 555, 562 (1978); *Harlow*, 457 U.S. at 818.

In the normal case, a party moving for summary judgment bears the burden of showing that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Clark v. Edmunds*, 513 F.2d 1219, 1222 (10th Cir. 2008). However, because qualified immunity is "designed to protect public officials from spending inordinate time and money defending erroneous suits at trial," courts analyze summary judgment involving qualified immunity differently. *Id.* Specifically, when a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to satisfy a two-part test: (1) the plaintiff must show that the defendants' actions violated a constitutional or statutory right; and (2) the plaintiff must show that this right was "clearly established at the time of the conduct at issue." *Rojas v. Anderson*, 727 F.3d 1000, 1003 (10th Cir. 2013). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment . . . ." *Clark*, 513 F.2d at 1222.

When determining whether a plaintiff has satisfied the initial two-part burden, courts must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion," which, in qualified immunity cases, usually means adopting the plaintiff's version of the facts. *Rojas*, 727 F.3d at 1004 n.5.

**III. Discussion**

In this case, defendants lawfully stopped plaintiff because the temporary registration tag on his vehicle was obscured by tinted windows. "After an initial traffic stop by an officer, further detention of the driver for purposes of questioning unrelated to the initial traffic stop is impermissible *unless*: (1) the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring, *or* (2) the initial detention has become a consensual encounter." *Arencibia v. Barta*, 498 F. App'x 773, 777 (10th Cir. 2012) (emphasis in original). Plaintiff did not consent to defendants detaining him, so defendants' only permissible basis for the stop was reasonable suspicion of wrongdoing. *Id.*

Reasonable suspicion is based on the "totality of the circumstances." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Courts look at the facts of each case as a whole, combined with the officers' experience and training, to determine if the officers had a "particularized and objective basis" for suspecting illegal activity. *Arencibia*, 498 F. App'x at 778. To overcome defendants' qualified immunity defense, however, plaintiff must show that defendants lacked reasonable suspicion *and* that the absence of reasonable suspicion, under the circumstances, was "clearly established." *Id.*

"A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Carroll v. Carman*, __U.S.__, No. 14-212, 2014 WL 5798628, at *2 (Nov. 10, 2014). In other words, "existing

5

precedent must have placed that statutory or constitutional question beyond debate." *Id.* (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). In our Circuit, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007). This standard protects the balance between vindicating constitutional rights and allowing government officials to perform their jobs effectively by ensuring that officials can anticipate when their conduct may give rise to liability for damages. *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012). Courts may grant qualified immunity because a purported right was not "clearly established" by prior case law, without resolving the often more difficult question whether the purported right exists at all. *Id.* This approach comports with the general reluctance among federal courts to decide constitutional questions unnecessarily. *Id.*

Here, plaintiff has not met his burden to prove that defendants violated his "clearly established" Fourth Amendment rights. Defendants identified several reasons for their suspicion that plaintiff was transporting illegal drugs. Plaintiff was traveling alone, in the middle of the night, on a long trip from a drug source area (Aurora, Colorado) to a drug market area (Maryland), along a known drug corridor (I-70), in a recently purchased 1992 BMW with temporary registration tags. Defendants found it unusual that plaintiff would make such a long trip in the middle of the night. Defendants also questioned why plaintiff would drive an older car across the country when he apparently owned newer cars—a 2011 Chevy Malibu and a 1998 Ford Mustang. While plaintiff has a reasonable explanation—his parents owned the Mustang and the Malibu already was in Maryland—defendants did not know those facts when they decided to detain plaintiff. Furthermore, based on their experience, defendants knew that drug

traffickers often transport drugs in older, less expensive vehicles because the risk is high that the police will confiscate the car if they apprehend a trafficker.  Defendants also believed, based on their experience, that driving a newly-purchased car was consistent with drug trafficking activity. Plaintiff told Lewis that he was moving to Maryland.  Lewis found this strange for two reasons: (1) plaintiff told Lewis that he owned a business in Colorado and (2) the car was not packed full with items that would suggest plaintiff was moving permanently to a different state.

At separate times, defendants approached the vehicle and noticed that both the front passenger seat and the back seat of the BMW were covered with blankets in a manner defendants found to be unusual.  They also noticed a pillow in the back seat.  This indicated to defendants that plaintiff was sleeping in the car, something they believe drug traffickers frequently do.

The Court need not decide whether defendants had reasonable suspicion to detain plaintiff because plaintiff has not met his burden to show defendants violated his "clearly established" rights.  A "plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it."  *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1200 (10th Cir. 2009).  Although a plaintiff need not "find a case with an identical factual situation, he still must show legal authority which makes it apparent that in the light of pre-existing law a reasonable official would have known that the conduct in question violated the constitutional right at issue."  *Id.*  For district courts in the Tenth Circuit, this means "Supreme Court or Tenth Circuit precedent" or clearly established authority from other courts that "found the law to be as the plaintiff maintains."  *Cordova v. Aragon*, 569 F.3d 1183, 1192 (10th Cir. 2009).

Plaintiff concedes that "[t]here is no case law directly on point," but argues this "presumably [is] because no Court would be asked to decide, much less publish a decision, on

such an obvious issue." (Doc. 71 at 24)  Plaintiff asserts that "[c]ase law defining the bounds of objectively reasonable suspicion to detain is abundant in the Tenth Circuit and District of Kansas.  Even a cursory review of that law makes it obvious that a detention based on the uncontroverted facts in this case alone would violate a motorist[']s Fourth Amendment rights." (Doc. 71 at 25)  The Court finds it significant, however, that plaintiff cites only one case, *United States v. Wood*, 106 F.3d 942 (10th Cir. 1997), to support his argument that defendants violated his "clearly established" Fourth Amendment rights by detaining him.

In *Wood*, the Tenth Circuit suppressed drug evidence because it determined the police officer who conducted the search—coincidentally Officer Richard Jimerson, one of the defendants here—lacked reasonable suspicion to conduct a search.  *Id.* at 948.  In that criminal case, Jimerson based his finding of reasonable suspicion on five factors.  *Id.* at 946.  First, he thought the defendant's response to his question about why he was traveling implausible.  *Id.*  The defendant told him that he was an unemployed painter who was taking a two-week vacation in California and driving a rental car back to Kansas.  *Id.*  Second, the defendant misidentified the city where he rented the car, confusing Sacramento with San Francisco.  *Id.* at 947.  Third, Jimerson noted fast food wrappers and open maps on the passenger seat.  *Id.* at 947.  Fourth, Jimerson found the defendant to be extremely nervous during the traffic stop.  *Id.* at 948.  Finally, Jimerson found that the defendant had a prior felony drug conviction.  *Id.*  The Tenth Circuit concluded that, even taking into account the totality of the circumstances, those "innocent" factors together could not amount to reasonable suspicion.  *Id.*

While there are some similarities between *Wood* and this case—odd travel plans and defendants' subjective determination that plaintiff was nervous—it is not so similar that a reasonable officer would have known that the circumstances in this case could not give rise to

reasonable suspicion.  For instance, defendants here noted that plaintiff was driving a 1992 vehicle with temporary tags instead of a 2011 Chevy Malibu that he owned, plaintiff had items covered in the front and back seat, and plaintiff was making his trip across the country in the middle of the night coming from a known drug-source area.  Plaintiff told Lewis that he was moving to Maryland, but his car was not loaded with items indicating a permanent move.  Furthermore, Lewis found it strange that plaintiff would relocate when he claimed to own a business in Colorado.

The Court wants to emphasize that it does not hold, and need not hold, that the facts of this case establish reasonable suspicion to detain plaintiff under the Fourth Amendment.  Rather, the Court concludes only that this case's facts are sufficiently different from the facts of *Wood* that *Wood* does not show defendants violated "clearly established" constitutional rights.

Finally, plaintiff has filed a Notice of Supplemental Authority (Doc. 77), citing Judge Belot's Order in *United States v. $39,440 in U.S. Currency*, No. 13-1325-MLB, 2014 WL 3881054 (D. Kan. Aug. 7, 2014).  Plaintiff argues that "the order supports [plaintiff's] argument that reasonable officers standing in the place of the Defendants would know that the factors on which they relied in detaining [plaintiff] did not amount to reasonable suspicion."  (Doc. 77 at 1)  But this argument misses the dispositive point:  plaintiff still must prove that defendants violated a right that was clearly established on the date defendants detained plaintiff.  *Swanson*, 577 F.3d at 1200.  As a result, only those cases decided *before* the incident here govern the Court's analysis.  *Id.*  An August 7, 2014 district court opinion does not show what law was "clearly established" on December 16, 2011, nor does it provide any Tenth Circuit or Supreme Court precedent on that point.

Qualified immunity is a high bar meant to protect public officials from civil liability. Plaintiff has identified no legal authority demonstrating "beyond debate" that defendants violated plaintiff's constitutional rights. *Carroll*, 2014 WL 5798628, at *2. Plaintiff has failed to meet his summary judgment burden.

### IV. Conclusion

Because precedent does not clearly establish that defendants lacked reasonable suspicion to detain plaintiff, the Court grants defendants' motion for summary judgment based on qualified immunity.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the defendants' Motion for Summary Judgment (Doc. 69) is granted.

**IT IS SO ORDERED.**

**Dated this 26th day of November, 2014, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**